Good morning. My name is Ethan Ballo and I represent Sear Bank Gheon. With the time today what I'd like to do is start with the old chief issue. And I understand you're gonna split the time, is that correct? That's correct. I'm gonna go for 15 minutes address old chief to the misconduct claims. I'll spend a minute or two on my rule 29. I'm gonna try to go for four and four and save three. Wish me luck, please. I'll watch my clock. Mr. Johnston will represent Mr. Bocardo and he will argue his client's rule 29. We'll submit on the second issue on the papers. And he has a total of five minutes? He has a total of five. All right, please proceed. Thank you, Your Honors. At trial, the government pre-trial moved to admit these the images of the child pornography and the defendants objected and they challenged the admission under rule 403. They contended that the images of minor victim one were so graphic, tragic, and disturbing that the trial court should not admit them for presentation for the jury because they would render the trial unfair on its face. We know from Andrew V. White, which the Supreme Court issued this year, that that alone, that some evidence can be so prejudicial it may not be seen by a jury because it can chase reason from the courtroom and will not lead to a dispassionate assessment of the evidence. In this case, we contend that the district court made two errors that amount to an abuse of discretion. This court teaches in Marino Balderrama that when you're assessing a 403 objection in a child pornography case, you must weigh alternatives. Are there other ways and other sources of evidence to address whatever is the only disputed issues? And here, what's clear from the hearing transcript before Judge Holcomb, was that the defendants would stipulate to everything but knowing receipt or knowing possession or viewing with knowing of access. And that's going to be proven in one of two ways under circuit precedent. One, you have to show that the person, it's not a viewing violation, it's for receipt of possession, it's did they accept delivery. And so the courts teach in Mobarger and Rahm that there's two ways the government can their burden. One is, did the defendant exercise dominion and control over it? And the government, I want to make one small point if I may, the government in their brief argues my client could have exercised dominion control. They say he could have printed, saved, etc. And they cite three different parts of the ERs. They cite, this is GAB 26, they cite 386, they cite 394 to 96, and they cite 386 to 90 and 494 to 496. Those sites do not support that claim. There's no evidence that our client ever exercised dominion and control. Their claim is our client commented. He viewed and commented. This is their argument and that's insufficient. I'm sorry if I'm not tracking the order in which you're presenting the arguments, but I wanted to, before you move on to the sufficiency on the possession question, with respect to 403, so the suggestion was stipulate that the materials were child pornography, stipulate in interstate commerce, and so that the only thing left to decide is knowing. And so in your view, the government could prove its case without establishing that the defendants knew that it was child porn? No, they could show it, or they had alternative avenues to prove. What the government said was you need to view the videos themselves. And my client didn't even receive the videos. The government argued you need to receive them so, and this is their quote, it's the most powerful evidence. I agree with that. It was powerful evidence. But the defendant said when you view it, everyone knows it's child porn upon viewing. No one disputed it's child porn. The question in the case, and this is what they told the district court, was they were arguing it was unsolicited, and so it's unknowing receipt. And the government, they're gonna defend the case by saying once we got it, the crime either is committed or not by what we do after the receipt. And then there's an exception under ROM. If we sought out these images, and what happens in ROM is the person goes to a website that says child porn available here, and they look at the, what's the word I'm looking for, the thumbnails, and they see the image, and they select the image, that that's enough to show that they're exercising dominion control. They're seeking out the image. And so that's what the government's arguing to have here. And so the 403 issue, the old chief issue that we're arguing, is there were alternatives. They say we have to prove she's a real girl. Well it's not an element. They have to show that constitutionally under Ashcroft. But here we know the agent can testify, I know this girl. But I guess as I understand your stipulation, was your stipulation still left the knowing element, the knowledge element for the jury to decide. But how does that not include knowing that it's the defendant's knowledge that it is child pornography? It's knowing it ahead of time. It's the temporal aspect. No one disputed that when you see these images of this child being raped, whether video or images, no one disputed that they're obviously child porn. We contend, and this is why we included the non-pornographic images, that looking at those images of themselves with description show the horrific nature. That's a real little girl. She's being raped by Steven Rodriguez. It's absolutely happening. The agents can testify that they met the child. So we're saying there's under, and this is what Cunningham grapples with in the Third Circuit. There's certain evidence that is so prejudicial, that is so inflammatory, viewing it itself makes it impossible to render fair judgment. I would sort of make it akin to the light key exception to, you know, judges can't be disqualified for what they learn in a case because they're jurists. But even like you, the Supreme Court says, no, certain times a judge, something happens in a case that can render fair judgment impossible. And that's what Andrews versus White is talking about with 403. That's what OG. Counsel, am I correct? Yes, you are. In the hearing on the motion in Lemony, counsel conceded that the stipulation would not cover the knowing, receipt, and possession elements, even though they would be stipulating the content was child pornography? Correct. That was the only issue for trial. They stipulated to everything. That's called the guilty plea. And so the only thing that wasn't covered. And so the district court had to decide whether this information that the government wanted to introduce in the first instance was relevant to those facts that were not, those issues that were not stipulated to. And then if the probative value was substantially outweighed by the danger of unfair prejudice. I agree with that. And so I think there was in two steps. One, I think the trial judge has to one, then under Mourinho-Balderrama, assess alternatives available. That includes the still photos. That includes descriptions. The judge didn't do that balancing. And then the second part, where we claim it's legal error, the judge has to review the images themselves to do the balancing. And I know the government complains that we didn't cite Curtin below. We were the trial lawyers. But they're saying the trial lawyers didn't cite Curtin. But the trial lawyers cited Cunningham and Storm. And they both do the Curtin analysis in detail. So I guess it's just not clear to me, and I'm sure you and Mr. Lara know the answer to this, but the district court didn't view the video? No. He didn't view the images. He didn't view anything. He ruled on the record. And I think the error was... Were they not transmitted to the district court? That is correct. What stands for the proposition that if the images are of charged conduct, there can be no unfair prejudice under 403. And they argue that in the papers. And they argue that at the hearing. And the judge essentially adopted that view of Ganneau. And that is not... That overstates Ganneau. And it ignores Mourinho-Balderrama and Curtin. And that's one of the errors we're challenging here. Why doesn't... Why doesn't... I guess I don't find in Curtin a requirement of viewing Curtin-involved written materials. The judge was certainly on notice as to the horrific nature of these images. Everything was described. So why isn't that enough, even under Curtin, that the judge knew what the content of it was and knew that it was prejudicial in that way? I would have two answers to that. One, I disagree with the premise, Your Honor, respectfully. At the... He knew the images were shocking and graphic, and they displayed disabled girl. That's the extent of the district court's knowledge. The later description... So the charged conduct, the conduct that's depicted in the images, the district court was not aware of? Not at the time he ruled. At the time he ruled, they were broad generalizations. And even under Curtin, Curtin stands for the proposition, Cunningham makes this clear when the Third Circuit adopts it, Storm discusses it, that the court cannot do a 403 balancing in the first instance without assessing the actual evidence that's being... the demand being presented. So your claim is in the Ninth Circuit there is an absolute rule that no matter what, the district court actually has to look at it? It's subject to a harmless error standard now under review, but yes. I don't read... I have to say, I don't read the cases that way, but I mean... That's my contention, Your Honor. I guess we're also trying to figure out if what you're arguing rises to plain error, right? I disagree. We argued 403. That's the claim under relief. I guess on the viewing, on whether the court viewed this evidence, I'm limiting it to that. That's how he abused his discretion. We raised the claim. He had the responsibility to review them. We don't have to cite a specific case. And to the extent we did, we cited Curtin and Cunningham. Let me just ask you, it seems like this case might be distinguishable from Curtin because at least here, the district court read the entire graphic descriptions of the videos, which I think you would agree describes them in great detail, whereas the district court in Curtin did not even know what all of the contents and inflammatory contents of the written stories were. Isn't that correct? No, no. I would disagree with that. I think if you look at the briefing, which is 104, 106, 108, and 109 of excerpt of record one, which has the motion eliminate hearing, which I believe was the 28th of October, 2022. I might be wrong. I think I'm right. I think he had very limited information that was not in the graphic detail that we would later present to this court. And I think in any case, these images, this is what Cunningham stands for. These videos were so horrific that they were saying they're per se excludable. And in any case, even if they weren't, the judge couldn't assess alternative, which is required without viewing them. He could not understand. But how would the... I'm sorry, I just want to follow up. Did you make a specific objection during the trial, during the court, that the court needed to view this? No, that... That's why I'm asking whether or not this is plain error. You might dispute that, but I think it's arguable whether we're looking at this for abusive discretion or plain error. So I just wanted to make that clear because you kind of skidded over that.  That was exactly my question. My next question then to you is because you've mentioned Cunningham and I'm intrigued by Cunningham, but you're arguing that third circuit case to support your basis that this was error for the district court not to have done some modification or make some ruling regarding the 403 issue that was raised. But it seems like Cunningham may be distinguishable because there the government had multiple video clips of child's porn to support each count. And if I recall correctly, the third circuit reasoned that each additional video clip played beyond the first one provided diminishing marginal returns to the government in terms of providing the requisite knowledge. Here we have, it seems like a different situation, but I want to give you a chance to argue this. The government, it's my understanding, only had one video. There was four videos. None were seen by my client. They were introduced at a joint trial anyway. The limiting instructions only said they didn't identify which element they went to. They went to all the elements supposedly, which is all the evidence. How long? Because from what I read, and thank you for correcting me if it was four instead of one, that it was a minute and some odd seconds? Three were approximately 30 seconds. One was approximately 45 seconds. They're graphic and horrible to watch. I can attest to that. But my point is on the 403 plain error, Your Honor, when we made the 403 objection, you look at the judge's ruling. That's pages 40 and 41. The judge undertook no balancing whatsoever. He adopted Ganoe as a hard and fast rule and said, and adopted, he quoted it saying they don't have to scrub all emotional information. That's a true statement. But what Mourinho-Balderrama says is you have to weigh alternatives and balance it. And there's no balancing here. And before I reserve and beg for a minute, I want to just say on the misconduct, here the prejudice is amplified by the naming of the victim. And it's amplified by suggesting that my client could have saved her from being raped. They rescued this girl. They arrested Rodriguez. My clients, the videos he got were taken years earlier. The images he got were years earlier. The videos Mr. Boccato got were years earlier. And the prosecution presented a case that this was a child being raped. My client could have saved her. They named her 47 times, 46 times. That's not inadvertent, as they tell this court. It was intentional. It was an unfair trial based on emotion. What more could the district court have done to prevent that? What's that? What more could the district court have done? What would you suggest? I think the district court, one, should have followed Storm. When they cited Storm, I think the district court opinion of Storm is a fantastic example of a district court rolling up their sleeves and doing this court's analysis. I think, second, if he had done that, he would have found alternatives. And I think, secondly, when they named this child, he should have stopped them. And I agree that that's plain error. The defendant should have been on their feet. And I agree with that. I'm not going to say they shouldn't have been. Everyone should have been outraged about naming this child. It was outrageous. But he should have responded when this case became about a very real girl currently suffering rapes when that wasn't true and everyone knew it. But the jury got a false image. And it rendered, there was no way. You guys are professional judges. You're trained in reason. And it's hard in a case like this, right, not to have an emotional response to this. Imagine the 12 in the box and how they responded to that presentation. They didn't have a fair chance to adjudicate the narrow defense that our clients had. My clients certainly showed he didn't solicit it. All of the text leading up to this is him saying, I'm not into this. I want penises. Stop it. Those are all the August texts. I'm not in it. Don't send it. And then he sends it when my guy says, doesn't send it. That's not seeking it out. It doesn't fit within ROM. And I'll reserve whatever the court lets me. Yeah, I just want to make sure, because you're right. It was one video for count, for each count in this case, correct? I think, for my client, he wasn't charged with any videos. My client was charged with four still images. All those images were shown. I believe Mr. McCarter, and how I read the government's, and the government's brief starts at the beginning. They describe. So I'm sorry, you said your client had stills? Yes, my counts 15 and 17, my client were only still photos. So what did you want the court to do? We, because it was a joint trial, we asked the court, both parties, and they joined each other's motions, asked the court to exclude the child pornography as too graphic. And at that point, the district court had to assess what was coming in and make determinations. When you look at Storm, the judge pairs it down. Did the client ever make a motion to sever? What? Did your client ever make a motion to sever? No, and the case was actually misjoined under Satterfield and 8B, and they waived that too. But in any case, your client didn't make a motion? No, they waived that too, Your Honor. We don't make that challenge on appeal, because that's waived under Rule 12 and Rule 8, because it wasn't timely made. But it was misjoined under 8B, and that's Satterfield by then-Judge Kennedy. Thank you. Thank you, Your Honor. Mr. Johnson? Thank you, Your Honor. Ellis Johnson on behalf of Mr. Picardo. As we can see from the old chief issue, that is an important issue that, as Mr. Ballo eloquently explained, infected the ability of the jury to use reason in this case. But what I wanted to spend my time on was Count 18, the sufficiency argument for the access with intent to view child pornography. I think it's important to begin by noting how novel and unique this particular prosecution is of this theory on these facts. When Congress amended 2252A to include this access theory of liability, it was attempting to close what appeared to be a hole. And this is in Sixth Circuit cases like Kogan, the Third Circuit in Tag, sorry, Sixth Circuit in Tag, and Eighth Circuit, and Sixth Circuit in Kogan. A concern that sophisticated individuals were using, for instance, special server devices like Tor to access hidden internet sites with names like Playpen, or Pedobook, or Pedoboard, jailbait subfolders in these hidden internet domains to view and share child pornography. And I give that introduction because in this case, Count 18 begins with Stephen Rodriguez texting through the Telegram app, my client, Mr. Bacardo, yo. They have not communicated for some two months. And when Mr. Bacardo responds, what's up, the government then bases the charge of access with intent to view child pornography on the basis of a video that the government says was sent to Mr. Bacardo. And the question presented is, when Mr. Bacardo accessed that video? And no one disputes that it's child pornography. But why isn't, under the sufficiency standard, it enough to have established that they had a course of dealing here, even if it was two months back? Well, a course of dealing, that would be a loaded term, in my opinion, what he had expressed interest previously. Fair enough. So if we were in a case where this was exclusively child pornography, I'd have a much harder hill to climb up. But if you look at the communications that Mr. Bacardo and Rodriguez had over the course of time, there was a variety of subjects and topics. And one of those was adult pornography, which, again, on every occasion, Mr. Rodriguez was sending unsolicited to Mr. Bacardo. And one time, and I can get to the citation here, I believe it was in June, Rodriguez sends Mr. Bacardo pornography that says, barely 18 or barely legal. One of the refrains you'll see in Mr. Bacardo's responses throughout all of these charges, including count 18 on August 24th, many months later, is that he expresses an interest not just in adult pornography, but more mature adult pornography. Am I looking at the wrong thing here? I think the ER page is 953, where August 24th, where right after yo, your client says, what's up? There's then a description of what just happened, and your client responds, nice? Correct, Your Honor. That is the count. And the question is, what was Mr. Bacardo's intent before he accessed the image? The government has argued in their brief that the eight-year-old who gave me head is a caption for a video that was sent. What you can see, and one of the difficulties the government concededly had in this case was proving it because the videos were set by Mr. Rodriguez to self-delete. There's no question that Mr. Bacardo never possessed or attempted to establish domain over these. But why doesn't that bring us right back to the sort of surreptitious accessing that was Congress's concern with access with intent? It might have been a different platform, but here you have a platform that's set up to try to delete the contraband that's being transmitted. Well, what we know from the record is that Rodriguez didn't set the adult pornography to auto-delete. And what we also know from the government's own case agent at trial is that to activate one of these videos, you have to push your finger onto a thumbnail. The government agent said he has no idea what the thumbnail was from whether it's a 30-second video or a 46-second video, whether it would be obvious that it was a child or even pornography. This was totally out of Mr. Bacardo's control. And I don't want to take too much time here. But the government wants, if I can just have a brief moment to wrap up, wants the court to assume that this is a caption attached to an image. We don't have that evidence. A reasonable juror can't say that it's unreasonable to believe that image came first and then after Mr. Bacardo viewed it, the caption came later. The part about nice that I think Judge Johnston asked about, the response to something that sent doesn't answer the fundamental question of access with intent to view. Did he access it with that intent? Thank you. Good morning, Your Honors. May it please the court. My name is Assistant United States Attorney Scott Lara. I'm representing the government in this appeal. I was also trial counsel below. So first and foremost, I just want to say that when dealing with sufficiency here, we have to look at this in the light most favorable to the government and all inferences should be found in favor of the government here. Mr. Lara, can you help me understand the rationale for the access with intent charge? Absolutely. So because the images were not possessed by Mr. Bacardo when we obtained the chat itself, the idea was that we would charge him for accessing with intent to view. Basically, him affirmatively clicking on the image with the intent to view that has child pornography is in fact the crime that he committed. Here, what we also have too is it wasn't actually a case agent who had said that he has to click on the videos to play them. It was Mr. Bacardo who admitted that in an interview with the case agent. So Mr. Bacardo was the one who says, I have to affirmatively click to play it. The case agent asked Mr. Bacardo, through the course of your dealings with Mr. Rodriguez, how much child pornography has he sent you? And he said 10 to 20 videos. There were some stray requests by Mr. Bacardo for MILF child pornography, which stands for adult pornography. But the vast majority of the chats, if I refer the court back to ERs 944 through 954, is discussing Mr. Rodriguez's abuse of children, Mr. Bacardo agreeing that this is nice, cool, agreeing to go to the care home to go abuse children, asking for $200 to film Mr. Rodriguez abusing children at the care home. So all of this, the course of dealing between these two, as your honor had said, was precisely that they are going to talk about and discuss child pornography. And Mr. Rodriguez is going to share his exploits with Mr. Bacardo. Does, I mean, given the specificity and the amendment of the access with intent, what guidance does the government look to in our court for how to charge this crime? It seems like the authorities let me know. Yes, the court can actually look to the tag case that defense counsel cited. So in their brief, defense counsel cited tag and said. That's a six-second case? That's correct. Okay. Is there, I mean, what do you think the, what's the best read of our court's law on how to charge access to intent? Well, if you look at cases like Flyer, for example, which was not charged as an access with intent to view case, that is a case that could have been charged as access with intent to view, where the government basically went to someone's computer, found that they had deleted images, and then charged that as possession. And the court said that that's not sufficient without more because there was no indication that he knew that those deleted images were in the unallocated space of his computer. Had the government charged access with intent to view in that case and know exactly when he was trying to view those images and then clicked and accessed those, that's what the government could have charged. Okay. Thank you. So can I ask you, I think you appear to concede that the district court did not view the child pornography exhibits here? They did not view them pre-trial, but they did view them during the trial. And defense counsel did not raise a contemporaneous objection to those child pornography images being admitted under 403. They made a different objection. So talk to me, because traditionally there is some discussion about whether or not all of the evidence needed to be in these kind of cases. So what was your, you, and I'm sure, I don't know if this is the first case you've done or if there's other of these types of cases that you've done where there is modification of the exhibits in some way, not unlike the third circuit case. So I'm trying to figure out what happened here and why there was no request on the government's part or ultimately why the district court didn't, you know, try to in any way modify what the jury was going to see here. Yes. So first and foremost, the government gave a very vivid description in its motion in limine of what these images were. Showed trial counsel for the defense what the images were, asked them if they disagreed with this description. They did not disagree with the descriptions. Then also the government orally described these to the court and the court agreed that they were shocking. So under this and under the facts of this case, it was so clear that these charged images were admissible. The government didn't feel like it was necessary to show it to the court before trial happened. Now, one other thing your honor had asked, there was a question of how many images per count there was. So for count 18, there was only one video available. There was only one video charged. That is the one that judge Johnstone was just referring to. And then for count 13, which is the receipt count, there were three videos. But one thing I want to make very clear when talking about these videos is these videos had self-destructed from the chat. So the chat does not actually show where the videos were sent at the specific times. So the way the government had to prove not only that the defendants knew what the videos showed, but also that it was in fact the correct video, was it had to go to the chat, see what was said in the chat about what the person was viewing. Then they had to go to Mr. Rodriguez's device, see the video that matched that, and then they went to Mr. Picardo, showed him that, a still from that, or showed him the video itself, and Mr. Picardo agreed that that is in fact what he saw at that time in the chat. And the only way for the jury to follow through that chain of inferences is to see the video, compare it to the confession, and compare it to the chat. So there was a lot of matching that had to be done. I mean, this doesn't entirely inform the 403, 404 analysis, but there was a lot of matching that had to be done that wouldn't have been able to have been done in the same way without the actuals. Correct. Well, could you not have done a screenshot? Screenshots would not have satisfied given the images and the videos themselves. Tell me why not. So the videos are talking about things like oral copulation, anal penetration, things like that. You can't actually tell based on any one particular screenshot what's going on because the videos are like handheld videos made by Mr. Rodriguez on the phone while he's engaging in these sex acts. So it's actually a little bit muddled what's happening. You need the context of the entire video to actually understand what it is. The other problem is the way that the defendants described the victims as being real victims that they knew Mr. Rodriguez or believed at the time Mr. Rodriguez was still abusing were 8 to 10-year-old autistic girl who could not speak. So without the audio, you cannot tell that this person being abused is someone who doesn't have the ability to speak. And one thing I want to point out too with Cunningham and some of these other cases is that in these cases, the defense offered to stipulate that anyone who viewed the child pornography would know that it is in fact child pornography. That's actually something the defense counsel claimed the stipulation here also covered in their reply brief, but that's not correct. If you look back at the record, the actual stipulation, and I'll read it to your honors, is essentially just that it is objectively child pornography and that's it. There is nothing that has to do with anyone's knowledge when they view it to know that it's child pornography. So with that sort of stipulation, a juror could think, well, if it's age-difficult pornography where someone is in fact 17 being depicted, but maybe someone subjectively believes it's 18 or older, that person would not be guilty and defense would be able to make that argument and the government couldn't refute it if they accepted that stipulation. So here are the stipulations they offered in ER 729 and 732. Quote, the images recovered depicted minors and they were engaged in sexually explicit conduct. And also it states, Mr. Ben-Gugelin is willing to stipulate that the materials found on the contained minors engaged in sexually explicit conduct. There's nothing there that talks at all about what anyone's knowledge is once they view it. So without that offer of stipulation, the court and the government needed to have the jury draw that conclusion because defense was unwilling to stipulate to that. And if you also look at Mr. Bacardo's trial attorney's argument, when this issue came up and the trial court said, well, why aren't you stipulating to knowledge? It seems like that's the deficiency here. That's the difference between this and Cunningham, for example. He said, the issue as to the stipulation for the images being child pornography, it covers a number of them. It doesn't cover the knowledge of the defendant, your honor. And that's not the issue. The government keeps bringing the knowledge of the defendant. We are not, that is not something we are agreeing, your honor. We are simply saying the images in question constitute child pornography. Based on all of this, it's very clear that the only offer on the table from defense was that it was objectively child pornography, but nothing about how they subjectively knew it was child pornography, nothing about how they knew that the person depicted in it was in fact a minor, which is something that the government has to prove. It's an element of the offense. And I believe that in their briefs, they talk about how it's not actually an element of the defense that the government needs to prove this. But as the government cited in its brief, and it seems I've walked it back a little bit here, an excitement video, for example, is a Supreme Court case that says, quote, that the sexually explicit nature of the material and the age of the performers must be known by the defendant. They're elements of the crime. The Ninth Circuit has adopted that. That's in the model jury instructions, which the parties had agreed to at trial. So that was the standard that the government was kept to. And the Third Circuit Cunningham case, what's your take on that? So the Third Circuit Cunningham case, there are two major distinctions here. First, the Cunningham videos were of incredibly graphic bondage, upside down torture pornography of a small girl. Like that is another level of child pornography depravity that was not present here. I mean, this was an autistic, mentally disabled. I'm not sure that's your strongest argument. Yes, Your Honor, understood. But secondly, and more importantly, as Your Honor correctly pointed out, there were less disturbing videos in Cunningham that they could have chosen from and chose not to. They chose to go with the most graphic ones available. Here, we didn't have that option. Here, for example, the one that the defense counsel complains about the most, Exhibit 27, that is the only video that underlines Count 18. There's no other videos to choose from. Similarly, with the other three videos, we have to piece them into the chats to show exactly where they are sent. And there's no other way to do it. And so those three videos needed to be shown. And each of those are less than 30 seconds. And then finally, in Cunningham, in that case, the defendant offered to stipulate that anyone who views this child pornography would know it's child pornography when they see it. That was not an offer here. And again, your point on that is that is a different possible stipulation than objectively. Correct. Because in Cunningham, they objected to objectively and anyone who viewed it subjectively would know. Whereas here, the only offer of proof or offer of stipulation was the objective offer. And they explicitly rejected the subjective one when even mentioned by the court as being a possible solution. Can I ask you about turning to the possession charge and ROM? Is there any testimony about how Telegram worked? And this is going to the control of the images for purposes of possession. Any evidence such as it was at issue in ROM that the defendants could had control of it on Telegram? Or was it simply relying simply on the fact that they could click and then poof, it's gone? So there's a distinction between Mr. Picardo and Mr. Bango-Ghelan. So for Mr. Picardo, we're talking about videos that Mr. Rodriguez had set to self-destruct. So it clicked and then it poofed on. And that's the justification that we just talked about for access with intent. But so with respect to possession and receipt, which also includes the same element, was there any testimony about how Telegram worked or whether you, in fact, could exercise any control over these things that are being sent to you? I believe so, Your Honor, but I don't have those record citations handy. There was an entire forensic analysis done and there was that person that did testify. Additionally, Your Honor, the jury could know that you could actually save the child pornography because you can see from Mr. Bango-Ghelan's chat that the child pornography was, in fact, saved by Mr. Rodriguez. He took screenshots, which means that he basically took a photo on his phone of what's being depicted at the time it's being depicted. So, yes. And that's sufficient for the jury to determine that Mr. Bango-Ghelan also had the ability to save and control these images? Correct. I did want to ask you about Mr. Bango-Ghelan and possession. That ultimately was what the jury would have to decide. Is that correct? I mean, based on, I guess, Mr. Bango-Ghelan's conversations with Mr. Rodriguez before the sending of the pictures or the video, the sending of the picture, and then his statement to law enforcement afterwards. Yes. That was the primary along with the image. What the jury would have to decide to determine if there was sufficient evidence of possession because it seemed, in terms of timing or temporal, very quick in terms. And then he is the one who made, or is he the one that made the statement that was negative of the image? He may have said something like... So, Mr. Bango-Ghelan's were not set to self-destruct. Those ones, those images stayed in the chat until Mr. Bango-Ghelan deleted the chat. And I also want to answer the previous question. I forgot to mention that the forensic analysis also mentioned that there was images in Mr. Bango-Ghelan's, like the deleted space on his phone. So that is evidence that he manually deleted the actual images themselves. And that's something that he did on his end. So that's also proof that he has dominion and control over them. And he could similarly save them, like email them, etc. So someone received, I guess I'm trying to think, and I'm not quite sure if this is exactly what the defense argued, but someone received it and immediately rejected it by deleting it. Is that, how long do they have to have possessed it or to have seen it before they delete it for it to be possession? Well, Your Honor, first I would say that that's not the factual circumstance with the charges here. And secondly, there is an affirmative defense that goes to exactly that. If you promptly delete the child pornography as long as you satisfy the other criteria of the affirmative defense, then we cannot charge you. And that's an affirmative defense to the charge here. But here what we have is- Can't charge you or you can't proceed with the charge? We can't proceed with the charge if it's an affirmative defense. It would be a complete defense to the charge in the first place. Counsel, am I looking at the wrong thing here? And maybe my notes on this are wrong. But at SER 73, which seems to be the interview with Mr. Bangugulian, where he's saying he got 10 to 20 videos and he would look at them after he got them. Is this relevant to something else? That is correct, Your Honor. Mr. Bangugulian and Mr. Picardo, both in their interviews, admitted that they received 10 to 20 videos from Mr. Rodriguez. And they looked at them. Or at least this one says you would look at them when he would send them to you. Yeah. Yeah. Yes, Your Honor. And it also goes to- he said he would entertain him, in fact. When asked, did you ever tell him to stop? He said, no. I never told him to stop. There's one point in the chat where he says, I was intrigued at first, but now it's too young. But then he receives another image and then says, cool. After Mr. Rodriguez sent that image with the caption, I put it in her butt. And then after that, he receives the receipt image. And again, on this page, he said, yeah, I just looked at it. Sometimes I'm busy or not really interested and cut it off. But before that, he said, honestly, I just like it like a lot of times I looked at it.  That's Mr. Bangugulian. And in Mr. Picardo's chats, they're even more explicit. They're more explicit in the chats, him asking, oh, yeah, let's see, after Mr. Rodriguez talks about some sexual act that he did with minor victim one. So this is not a case where, as Your Honor was implying, that it's completely unsolicited out of the blue. This is like a course of conduct where they've exchanged a significant amount. I'm only highlighting what the defense attempted to argue, apparently. Is that correct? Yes, I believe that's right. And at this point, for possession, are we looking at it in the light most favorable to the government? Yes. I just wanted to make that clear. Yes, Your Honor. Absolutely. I completely agree. We're looking at the light most favorable to the government. Most of what defense counsel's brief is are inferences that they wish that the jury had drawn and that the jury rejected. And most of these issues we're looking at for plain error. Is that correct? That is correct. So, for example, when it comes to the 403 issue, they didn't raise contemporaneous objections. With the Curtin issue, they never asked the court to view the images. Which 403 issue? So when they claim that the images were admitted outside of 403, that they should have been excluded, they raised that at the motion limine stage. And then the court then said, my preliminary ruling is to let these in. But then they never contemporaneously objected at trial when the government moved to admit these videos. And they did object to other grounds. So they knew that they could object, and they knew it was a preliminary ruling. And under Ninth Circuit case law, that is not sufficient to preserve the issue for appeals. So it's under plain error. And that's in the government's brief as well. And I also want to address a couple of things that your honors had asked questions about to defense counsel. Could I just, do you want to take a chance to reply to the Andrew? Um, um, argument about prosecutorial misconduct? Uh, which argument? So the recent Supreme Court case that has set a new test for, um, this alleging with the repeated dozens of times we hear, um, of the victim's name. Yes, your honor. So one thing the government tried to do in its brief is trying to put in a context each time it came up. And for the, for during the testimony, essentially what happened was government counsel, which would be myself, would be talking to somebody who actually knew the victim. So Lizette Martinez, I believe, is the first time this came up. She actually knew minor victim one. And when asked a question about this particular victim, she then volunteered the victim's name. And then from there, the questioning flowed in a organic manner of just responding about the person she just had named by first name. And the government was asking. You can see now that the better practice would be to steer the witness back towards using, um, the minor victim and, and the pseudonym in this case wasn't much of a pseudonym, was it? Well, your honor, the, the government never actually applied a pseudonym. I believe that was defense counsel on appeal that came up with that pseudonym. I see I have no further time, but I'm happy to answer any additional questions. Thank you. One minute. Thank you. I'll, I'll use it wisely. One, I disagree there's a course of conduct. The, there was a motion, there was a motions hearing on duplicity, multiplicity and duplicity, and the government said there's no course of conduct, your honors. They sent it to the district court. These are stop gaps in times. Judge Bennett, you talk about the April chat on a different platform in text to say my guy is soliciting stuff later. 864 of the ERs through, through 890s, 880s, the chats with my client, six weeks. He doesn't request anything. He tells, he supports Rodriguez getting away from porn. He asked for pictures of penis. And as judge, Chief Judge McGee points out, right before these texts, he said he disclaims interest in any porn, any child porn, says, I don't want to see this. These aren't the pictures I want. And then he gets it. That's not solicitation. Judge Johnstone, it's not that he had, first of all, there is no testimony about the ability. The citations to the record they relied on is page 386 through 390 and 494 through 496. They don't say anything about the telegram chat, but even if they did, they have to have  It's past tense. Where's the evidence that my client did something other than delete? There's no such evidence to answer your question, Judge McGee. That's what Rahm talks about. When it comes on his screen and he sees it, he has to do something to exercise control. What Rahm says they did there was he enlarged it and then he saved it to his hard drive. He later deleted it. The government says there's stuff on my client's hard drive not related to the counts of conviction. He's only on counts 15, 17, the August conduct. Whatever he may have done wrong in April, whatever he may have confessed to in April wasn't charged here. At the time he's charged, he's saying, don't send me this stuff. He doesn't exercise control or seek it out. The last thing I'll say, because it ties it all together, is what the government began with. These men confessed to seeing the six to eight year old girl being raped. They had witnesses that knew the child. There was no dispute that she was a child, that she was six to eight, that everyone knew she was being raped, that she had been raped. The notion that they needed these images where there was live testimony of who she was. They named her. That's my was my student in your honor. I could have been better. I apologize for that. I didn't the child. I didn't name her last name. I don't know her last name. I wouldn't do that. But I get the point. But the point is they made this trial about this child when the guys confessed. They didn't need to try it this way. And the big question is, was this fair? The last thing I'll say on the 403 issue is it wasn't preliminary. They had a whole preliminary at the pretrial conference. The government made a motion to admit them. The judge admitted that motion in full and ruled that if they're charged images, they get to come in per se under Gannot. The judge made a later preliminary ruling about different images that weren't charged, and he didn't let those in. But we're not challenging those in appeal. Judge Holcomb ruled that these images at the pretrial conference made a definitive ruling after extended dialogue and discussion. It is preserved under this court's case law. In the absence of questions, I'll thank the court. Thank you. Thank you, your honors. You have a minute. I promise to take a shorter minute, your honor. But I did want to just address one thing that the government indicated about Count Out 18, saying that it needed to play the video because it was the only video they had. That was access with intent to view child pornography. The playing of the video, every single second of that horrendous video, had nothing to do with whether when Mr. Picardo pushed on a thumbnail, he was accessing that content with the intent to view child pornography. And just to correct the government, who was attempting to correct me, on 2 ER 303 is where the case agent himself explains how thumbnails work, that a thumbnail can be any part of an image. And we don't even need to go there because the government has conceded here, if I heard him correctly, you can't tell from the thumbnails what it is you're about to see. Thank you. Thank you. Um, Mr. Laura, Mr. Below, Mr. Johnson, thank you for your oral argument presentations. The case of United States of America versus Miguel Picardo and Mr. is now submitted and we are adjourned. Thank you. All right.
judges: MURGUIA, BENNETT, JOHNSTONE